[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is an appeal under Section 8-8(b) of the Connecticut General Statutes from the decision of the Plainville Zoning Board of Appeals (Board) to grant a variance to Angelo and Assunta Aiezza to divide their nonconforming residential property at 167 Tomlinson Avenue in Plainville into two smaller, nonconforming residential lots. The plaintiffs, Plainville Zoning Enforcement Officer William H. Dornfried and the Plainville Planning and Zoning Commission (Commission), have standing to prosecute this appeal because each, as an "officer, department, [or] bureau of the municipality charged with the enforcement of any order, requirement or decision of the [defendant] board [,]" Conn. Gen. Stat. 8-8(a), is a "person aggrieved by [the] decision of the board," within the meaning of Section 8-8(b). Tyler v. Board of Zoning Appeals,145 Conn. 655, 658 (1958) (a municipality concerned with the enforcement of its zoning regulations may always participate as CT Page 6972 a party to a zoning appeal); Dupuis v. Zoning Board of Appeals,152 Conn. 308, 309-11 (1965) (a town zoning enforcement as an agent of the town zoning commission, and thus of the town itself, may also participate as a party to a zoning appeal).
In deciding any appeal from the granting or denial of a variance, this Court is not at liberty to substitute its own judgment for that of the zoning board as long as the record reflects that honest judgment has been fairly and reasonably exercised. Baron v. Planning and Zoning Commission, 23 Conn. App. 255,257 (1990). Unless the plaintiffs prove that the zoning authority's decision was illegal, arbitrary or an abuse of its discretion, the decision must be upheld and the appeal therefrom must be dismissed. Id.
The power of a zoning board of appeals to grant a variance under General Statutes 8-6(3) requires the fulfillment of two conditions: "(1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." Smith v. Zoning Board of Appeals, 174 Conn. 323, 326 (1978). The Town of Plainville has incorporated both of these requirements into the Plainville Zoning Regulations (P.Z.R.) as express limitations upon the variance-granting authority of the defendant Board. P.Z.R. Article 13, Section 1300.[1]
The plaintiffs contend that their appeal should be sustained for two reasons: first, that the Board's decision was illegal, because it enlarged and/or extended nonconforming uses instead of speedily eliminating such uses, and thereby substantially affected the town's comprehensive zoning plan; and second, that the Board's decision was arbitrary and an abuse of its discretion, because it reversed a 1987 decision to deny a virtually identical request for a variance without any intervening change of circumstances to justify the result.
The defendant responds generally that its decision should be upheld as a reasonable exercise of its discretion to grant variances where the proposed new use or configuration of the property will be harmonious with and tend generally to preserve the character of the affected neighborhood. For the following reasons, the Court agrees with the plaintiffs that the defendant Board's decision must be overturned.
 I.
The comprehensive zoning plan of a municipality is to be CT Page 6973 found in its local zoning regulations. Burnham v. Planning and Zoning Commission, 189 Conn. 533, 541 (1983). Any decision to grant a variance under circumstances not approved by local regulations thus fails the first requirement of Section 8-6
(3), for it "affect[s] substantially the comprehensive zoning plan." Smith v. Zoning Board of Appeals, supra.
"It is the indisputable goal of zoning to reduce nonconforming to conforming uses with all the speed justice will tolerate." Helbig v. Zoning Commission, 185 Conn. 294,306 (1981). Thus it is the "accepted policy of zoning to prevent the extension of nonconforming uses." Id.
Most towns and cities have adopted this policy by explicitly incorporating it into their local zoning regulations. See generally, Point O' Woods Ass'n, Inc. v. Zoning Board of Appeals, 178 Conn. 364, 369-70 (1979). Following this tradition, the Town of Plainville has explicitly provided as follows in Article 7 of its Zoning Regulations:
 4. A nonconforming use shall be changed to a conforming use only, except that: (a) A nonconforming use may be changed to another nonconforming use not more objectionable in character by permission of the Planning and Zoning Commission.
This provision demonstrates that while Plainville recognizes the appropriateness, under some circumstances, of converting nonconforming uses to other, less offensive nonconforming uses, it has conferred the sole power to authorize such conversions upon its Planning and Zoning Commission, a legislative body with broad powers to make town-wide zoning policy, rather than its quasi-judicial Zoning Board of Appeals. Therefore, the defendant Board has no discretion whatsoever to allow a variance if its necessary result will be the extension or enlargement of an existing nonconforming use or the creation of a new one.
Against this background, the decision of the defendant Board was illegal because it both extended and enlarged an existing nonconforming use and created two new nonconforming uses which did not previously exist. The applicants' existing lot is currently the site of a three-family house, a detached garage and a shed. Located in two different zoning districts — one residential (R-10), the other commercial (GC) — it conforms to the minimum requirements of the Regulations both in street frontage and in easterly side yard dimensions, but is nonconforming both in rear yard and side yard dimensions on its westerly side and minimum lot size for a three-family dwelling. CT Page 6974
As proposed, however, by the applicants, and approved by the defendant Board after due notice was given and a public hearing was held, the two new lots would be used and configured as follows: an 11,300-square-foot parcel, having 63 feet of street frontage, would contain the existing three-family home; the remaining 9800-square-foot parcel, having only 55 of frontage, would be the site of a new two-family house. The first new lot, situated mostly in an R-10 residential zone, would be nonconforming to local Regulations both in street frontage and in minimum lot size for a three-family dwelling. The second new lot, situated primarily in a GC commercial zone, would similarly be nonconforming both in street frontage and in minimum lot size for a two-family dwelling.
One clear result of the defendant Board's decision was thus the creation of nonconforming uses where none previously existed. This is true both as to street frontage for each new lot and as to minimum lot size for the new two-family dwelling. Another result of the Board's decision was to extend or enlarge an existing nonconforming use by increasing the degree to which the parcel containing the existing three-family house would fail to comply with the minimum-lot-size requirement of the local Regulations. Because of these results, the variance should not have been granted and cannot now be upheld.
 II.
In view of the foregoing analysis, it is unnecessary to decide the plaintiffs' further claim that the granting of this variance was an abuse of the Board's discretion because it reversed the 1987 denial of a similar application. On that score, however, the Court calls the parties' attention to Section 1320 of the Plainville Zoning Regulations, which provides that:
 No application with respect to a matter which has been denied by the Board shall again be filed within six months from its original denial, unless a new application is submitted with an affidavit containing facts showing that there has been a material change in conditions affecting the merits of the application.
So stating, Section 1320 plainly empowers any disappointed applicant for a variance to renew his application as frequently as once every six months, with or without any intervening change of circumstances. For that reason, the plaintiffs' alternative ground for overturning the Board's decision is CT Page 6975 plainly without merit.
For all the foregoing reasons, the Plaintiffs' appeal is hereby sustained.
MICHAEL R. SHELDON JUDGE OF THE SUPERIOR COURT